IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CYNTHIA LEWIS,                          )
                                        )
            Plaintiff,                  )
      v.                                )    CASE NO. 2:09-CV-862-WKW [WO]
                                        )
DEPUTY JASON BLUE, *et al.*,            )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

This federal civil rights case arises out of an August 11, 2008 encounter between Plaintiff Cynthia Lewis and Defendants, Deputies Jason Blue and Pearl Carter of the Butler County Sheriff's Office. Before the court is Defendants' Motion to Dismiss (Doc. # 11), which has been fully briefed. The motion is due to be granted in part and denied in part.

## I. FACTS

As alleged in the Amended Complaint ("Complaint") (Doc. # 17), the facts are as follows.[1] As of August 11, 2008, Ms. Lewis was recently separated from her husband, Lorenzo Lewis, and was not getting along well with him. Ms. Lewis was living at what had been the Lewis family residence, while Mr. Lewis had left and was living separately. The complaint does not state exactly how long Mr. Lewis had resided away from the residence. (Doc. # 17, ¶¶ 10, 11, 13.) Mr. Lewis called Ms. Lewis to make arrangements to pick up a

---

[1] The court emphasizes that the allegations are stated as fact only for purposes of reviewing the Complaint, "and should not be construed as findings of fact" by the court. *Corbitt v. Home Depot U.S.A., Inc.*, 589 F.3d 1136, 1143 n.2 (11th Cir. 2009). In reviewing a complaint on a motion to dismiss, it is axiomatic that the court must accept all the allegations it contains as true. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).

car at the residence, and when he later appeared at the residence, Ms. Lewis asked him to remain on the public road until she moved the car to the road.  According to the complaint, Mr. Lewis "refused" but also "left with his niece" at that point.  (Doc. # 17, ¶¶ 10, 14, 15.) Some unspecified time later, Mr. Lewis, his niece, and Deputy Blue all arrived at the residence.  (Doc. # 17, ¶ 18.)  Deputy Blue told Mr. Lewis that he could come onto the property to the place where the car was, informed Ms. Lewis that Mr. Lewis had a right to be on the property, and said that he was "taking over" the situation, which led to Ms. Lewis "cursing about Deputy Blue's statement and behavior."  (Doc. # 17, ¶¶ 20-24.)  Ms. Lewis then turned to go back into the house, when Mr. Lewis asked for his work shoes.  Ms. Lewis said she thought they were on the back porch, but upon inspection those shoes proved to be Ms. Lewis's son's shoes, so Ms. Lewis took them into the house.  (Doc. # 17, ¶¶ 27-32.) Then Ms. Lewis walked back outside onto the front porch, "where Deputy Blue charged her and grabbed her," and "told her that she was under arrest," even though there was no probable cause to do so.  (Doc. # 17, ¶¶ 34-35, 39.)  In doing so he twisted her "arm and hand behind her head and back," breaking one of Ms. Lewis's fingers; he did not try less violent means of arresting Ms. Lewis.  (Doc. # 17, ¶¶ 33-39.)  Ms. Lewis was further injured when Deputy Blue forced her into his police car, in part because she had limited mobility from recent neck surgery.  Ms. Lewis contemporaneously complained of pain and numbness in one leg.  (Doc. # 17, ¶¶ 40-41.)  While Ms. Lewis was being transported to jail, Deputies Blue and Carter searched her house without a warrant or probable cause, and seized some of her

property.  (Doc. # 17, ¶¶ 45-47.)

Ms. Lewis was taken to the hospital and subsequently visited specialists, who confirmed that she suffered injuries.  She was unable to work because her condition was aggravated by the injuries suffered during the arrest, and she eventually lost her job because she was unable to come to work.  (Doc. # 17, ¶¶ 48-54.)  Ms. Lewis was charged with disorderly conduct and resisting arrest, but the charges were dropped.  After Ms. Lewis's counsel contacted the Butler County Sheriff's Office about the possibility of a lawsuit, she was again indicted for disorderly conduct and resisting arrest, but a trial scheduled for June 15, 2009, was not held.[2]  (Doc. # 17, ¶¶ 55-61.)

Ms. Lewis's Complaint asserts ten counts against one or both Defendants.  Count I is a Fourth Amendment claim for "unlawful entry" against both Defendants.  Count II is a Fourth Amendment claim for "unlawful search and seizure" against both Defendants.  Count III is a Fourth Amendment claim for "excessive force" against both Defendants.  Count IV is a Fourth Amendment claim for "failure to prevent violation of rights" against Deputy Carter (and other unnamed Defendants) only.  Count V is a state law claim for trespass against both Defendants.  Count VI is a state law claim for assault and battery against both Defendants.  Count VII is a state law claim for "invasion of privacy" against both Defendants.  Count VIII is a state law claim for intentional infliction of emotional distress against both Defendants.  Count IX is a state law claim for conversion against both

---

[2] The complaint does not state whether the state criminal charges remain pending.

Defendants. Finally, Count X is a state law claim for false arrest or false imprisonment against all Defendants.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff. *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008). "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

The individual defendants raise the defense of qualified immunity to the constitutional claims asserted by Ms. Lewis. "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson County*, 582 F.3d 1252, 1258 (11th Cir. 2009) (quotation omitted). Because qualified immunity, as the name suggests, provides actual immunity from suit, rather than simply a defense to liability, its applicability should be resolved "at the earliest possible stage

4

in litigation." *Id*. (quotation omitted).  Accordingly, it may be raised at the motion-to-dismiss stage, but "is typically addressed at the summary judgment stage of a case," and all a court at this stage is permitted to do is determine whether the complaint "allege[s] the violation of a clearly established constitutional right." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

A qualified immunity determination requires evaluation of a multi-part test.  First, a defendant must establish that she was acting within her discretionary authority as a public employee when the conduct in question occurred.  *Townsend*, 582 F.3d at 1258.  Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'"  *Id*. (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)).  Before *Pearson*, courts were required to conduct the constitutional inquiry in order, that is, to decide whether a right existed (and whether it was violated) before deciding whether it was clearly established.  Now, however, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Id*. (quoting *Pearson*, 129 S. Ct. at 818).

In this case, it is undisputed that all the individual defendants were acting within their discretionary authority during the events in question, so the burden shifts to Ms. Lewis to show that her clearly established constitutional rights were violated**.**  *Id*.  The substantive constitutional claims made by Ms. Lewis are for: (1) unlawful entry onto her property; (2) unlawful search and seizure of her home and personal effects; (3) excessive force; and (4)

5

failure to prevent violation of her rights, against Deputy Carter only.  Each claim will be discussed in more detail below.

If the complaint does allege a constitutional violation, it must be one that is "clearly established" in order to survive a qualified immunity defense.  *St. George*, 285 F.3d at 1337. A constitutional violation is "clearly established" if "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted."  *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1233 (11th Cir. 2010) (internal quotation omitted). Such clarity may come from "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."  *Id*.  At times, "'a general constitutional rule already identified may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'" *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (alteration in original).   "A plaintiff need not show that the officer's conduct specifically has been held unlawful," but only that the officer would have "fair warning that [his] conduct was unconstitutional," on the basis of "sufficiently clear" law. *Bates v. Harvey*, 518 F.3d 1233, 1247-48 (11th Cir. 2008).

Finally, the standard of review applicable to a motion to dismiss is "tightened . . . in section 1983 cases where qualified immunity is at issue." *Harper*, 592 F.3d at 1233; *see Danley*, 540 F.3d at 1314 ("Under the heightened pleading requirement, the relevant facts

6

must be alleged with some specificity.").  The court must be able to determine whether the facts set out in the complaint "indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred."  *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

## A.  Unlawful Entry (Count I)

Ms. Lewis does not cite, and the court is not aware of, any authority for the existence of "unlawful entry" onto one's property as a freestanding Fourth Amendment violation separate from a claim for unreasonable search and seizure.  *See, e.g., Lenz v. Winburn*, 51 F.3d 1540, 1551 (11th Cir. 1995) (treating a claim for "entry" into a house as a claim involving a "search").  In Count II, Ms. Lewis asserts a claim for unreasonable search and seizure against the same Defendants for substantially the same conduct.  Any relief Ms. Lewis is due for Defendants' conduct in entering her property or searching her home and belongings will flow from Count II, and Count I adds nothing to the Complaint. Accordingly, Count I is due to be dismissed.

## B.  Unlawful Search and Seizure (Count II)

### 1.  Deputy Carter

As an initial matter, it is necessary to briefly take up the status of Deputy Carter as a Defendant in both Counts II and III.  Each count names Deputy Carter as having participated in the violations of constitutional rights at issue.  Yet, as Defendants note in their brief, the 74 paragraphs of factual allegations prior to the enumeration of the Counts do not mention

Deputy Carter by name a single time.  With respect to Count II, it is nowhere explained when Deputy Carter arrived on the scene (which would be relevant to whether she was involved in the initial entry onto the property), or whether she was one of the unspecified deputies involved in entering and searching the house after Ms. Lewis was arrested (which is the other factual basis for the search and seizure claim).  With respect to Count III, all of the factual allegations involving excessive force relate to Deputy Blue's actions.  Indeed, the fact that Ms. Lewis separately brought Count IV against Deputy Carter alone for failure to intervene implicitly acknowledges this.  Accordingly, the court concludes that neither Count II or III states a claim against Deputy Carter, and they are due to be dismissed with respect to her.

### 2. *Deputy Blue*

"It is a fundamental rule of Fourth Amendment law that warrantless searches and seizures inside a home are presumptively unreasonable." *Bates*, 518 F.3d at 1243 (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)).  Here, it is undisputed that Defendants did not have a warrant to enter Ms. Lewis's property.  Yet, because "the ultimate touchstone of the Fourth Amendment is reasonableness," *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006), there are two principal exceptions to the warrant requirement, for searches conducted by consent or under exigent circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967).

Deputy Blue's primary argument for dismissal of this count stems from the consent exception.  (Doc. # 12, at 9-12.)  He suggests that because Mr. Lewis had also lived at the

house until quite recently, and because he was Ms. Lewis's husband, Mr. Lewis had an equal right to enter the property to retrieve his belongings.  Of course, the basis for the claim is not Mr. Lewis's entry onto the property, but Deputy Blue's.  Deputy Blue therefore proceeds to argue that because Mr. Lewis had the right to enter the property, he had "the ability to consent to the entry of the house by the Deputies."  (Doc. # 12, at 11.)

As an initial matter, it is not clear from the Complaint that, as Deputy Blue claims, Mr. Lewis had only been living away from the residence for two days.  This statement is apparently based on the Complaint's statement that two days before the incident that gave rise to this case, Ms. Lewis called the Butler County Sheriff's Office to "remove her husband from her property."  (Doc. # 17, ¶ 11.)  But this statement does not make it clear that Mr. Lewis actually *lived* at the residence until that date, but only that he was for some reason present at the residence, just as he was two days later when the events underlying this lawsuit transpired.  Further, even assuming that Mr. Lewis's departure from the residence was so recent that he retained a right to reenter it, Deputy Blue's claim that he therefore possessed the ability to consent to their entry even over his wife's objections is unsupported by the law. Indeed, Defendants' brief notably lacks citation to any case law for this specific proposition. Only four years ago, the Supreme Court decided a case with substantially similar facts, and held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to [her], regardless of the consent of a fellow occupant."  *Georgia v. Randolph*, 547 U.S. 103, 122-23 (2006); *see also United States v. Travis*, 311 F. App'x 305, 310 (11th

9

Cir. 2009) ("Where co-tenants are present at the entrance, and one consents while the other objects, police may not search.").

Accordingly, the Complaint states a claim for the violation of a constitutional right. For the claim to survive a qualified immunity challenge, however, the right violated must also have been a "clearly established" one. In light of *Randolph*, a Supreme Court decision decided over two years before the events underlying this suit, the court finds it was clearly established that law enforcement officers could not enter a residence over the objection of a present co-tenant, even when another co-tenant gave permission.[3]

Finally, the court notes that even if this legal holding is incorrect, the motion to dismiss this count should still be denied, because, as noted earlier, the facts are not sufficiently developed at this stage to determine whether Mr. Lewis remained a "resident" or "domiciliary" of the property for purposes of the Fourth Amendment. For the foregoing reasons, the motion to dismiss Count II is due to be denied with respect to the Fourth Amendment claims against Deputy Blue. As explained above, it is due to be granted in its entirety against Deputy Carter.[4]

## C. Excessive Force (Count III)

---

[3] Defendants do not argue that the "exigent circumstances" exception is applicable to this case.

[4] Defendants also request that this Count be dismissed to the extent it relies on the Fourteenth Amendment as an independent cause of action. (Doc. # 12, at 8-9.) Ms. Lewis does not respond to this argument, and it is not clear to the court that any substantive Fourteenth Amendment claim was intended. Nonetheless, because Defendants are correct that the Fourth Amendment provides the proper ground for relief under the facts Ms. Lewis has pled, the motion is due to be granted to the extent any separate Fourteenth Amendment claim is alleged.

"'The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.'"  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)).  In evaluating an excessive force claim, a court must "balance the necessity of the use of force against the arrestee's constitutional rights," which requires "evaluat[ing] several factors, including, 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Id*. at 1305-06 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

With respect to the claim against Deputy Blue, the motion to dismiss is due to be denied.  The Complaint straightforwardly alleges that, as Ms. Lewis walked out onto her front porch, Deputy Blue "charged her and grabbed her," twisted her arm, and broke her finger.  (Doc. # 17, ¶¶ 34-36.)  Later, Deputy Blue and other deputies forced Ms. Lewis into a patrol car, which caused her additional injury due to her recent neck surgery.  (Doc. # 17, ¶¶ 40-44.)  Ms. Lewis's claim is that there was no probable cause to arrest her at all.  (Doc. # 17, ¶ 39.)  When there is no basis to arrest a person, "officers [are] not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive."  *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (emphasis in original).

Deputy Blue's response is to point out that Ms. Lewis was later arrested for disorderly

conduct and resisting arrest, such that the balancing test to determine the reasonableness of force with respect to the situation should make any use of force legitimate. But that ignores the current posture of this case, which requires that all Ms. Lewis's allegations be taken as true. The mere fact that the deputies placed Ms. Lewis under arrest cannot undermine her claim, at the motion to dismiss stage, that their actions were unjustified and excessive force was used in effecting the arrest. Deputy Blue quotes the elements of these offenses under Alabama law as evidence that Ms. Lewis posed a danger to the safety of others, but, as counsel is aware, there is a difference between being arrested for an offense and being convicted of it. The fact of an arrest does not demonstrate that the person arrested committed all the elements of the offense. Finally, with respect to qualified immunity, *Thornton* makes it clear that the violation alleged to have occurred here was a clearly established one. *Id*. at 1400.

The motion to dismiss Count III is due to be granted with respect to Deputy Carter, and denied with respect to Deputy Blue.

### D.  Failure to Intervene (Count IV)

This count is brought against Deputy Carter only, and alleges that Deputy Carter violated Ms. Lewis's constitutional rights by failing to intervene when her "civil rights were being violated." (Doc. # 17, ¶ 107.) The Count does not clarify whether the failure to intervene relates to witnessing Deputy Blue's alleged excessive force, witnessing the alleged unlawful search and seizure, or both, but case law seems to indicate that failure to intervene

12

claims are cognizable only when related to excessive force violations.

This Count suffers from the same infirmity as the other Counts against Deputy Carter. The factual allegations never state that Deputy Carter actually witnessed any of the alleged violations, or that she was in a position to intervene and failed to do so. Again, it is not clear from the Complaint when, if ever, Deputy Carter was even on the scene. This alone is enough for dismissal, but even if the court were to assume that Deputy Carter was present somewhere on the property throughout all the events complained of, this Count still fails to state a claim.

The cases in which the Eleventh Circuit has approved failure to intervene claims contained much more egregious, and clear, allegations than those here. In one, officers were alleged to have refused to render medical attention to a man they knew had just been shot, instead shackling him face down on the ground as he moaned in pain, and saying that they hoped he bled to death. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 (11th Cir. 1985). More generally, to state a claim, it must be alleged that the officer was "in a position to intervene," and the Eleventh Circuit has required specific evidence of how an officer could have observed or stopped the use of excessive force. *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998). At this stage, such evidence need only take the form of allegations, but the Complaint does not contain any allegations at all as to Deputy Carter's behavior, other than a bare recitation of the elements of the cause of action, in the form of a quotation from *Fundiller*, in the Count itself. (Doc. # 17, ¶¶ 106-07.) Accordingly, Count IV does not state

a claim upon which relief may be granted, and it is due to be dismissed.

### E.  State-Law Claims (Counts V-X)

These claims may be considered together, as the basis for the motion to dismiss is that Defendants, as deputy sheriffs, are absolutely immune from suit on state-law claims.  (Doc. # 12, at 16-17.)  It is abundantly clear that Alabama sheriffs and their deputies enjoy absolute immunity from state-law claims for money damages based on actions taken within the scope of their employment, and such immunity is not limited only to claims of negligence. *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1431 (11th Cir. 1997); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *see* Ala. Const. art I, § 14.  While the Alabama Supreme Court recently held that such immunity is not available to jailers employed by a sheriff's office, that decision only underscores that absolute immunity does protect sheriffs and their deputies serving in non-jailer capacities. *Ex parte Shelley*, No. 1080588, 2009 WL 2997498, at *6 (Ala. Sept. 18, 2009); *see also LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009).

As Defendants note, the cases cited by Ms. Lewis largely concern a different type of state-law immunity, do not involve sheriffs or their deputies, or both.  So long as a sheriff or deputy sheriff acts within the scope of his or her employment, immunity exists with respect to state-law claims, even for willful or malicious actions.  Cases discussing exclusions for intentional actions, cited by Ms. Lewis, refer to state-agent immunity, not the absolute immunity provided to Alabama constitutional officers and their "alter-egos." *See Ex parte*

14

*Davis*, 930 So. 2d 497, 501 (Ala. 2005) (dismissing an assault and battery claim against a deputy sheriff on the basis of absolute immunity, and discussing the limited circumstances in which a suit may be maintained against sheriffs and deputy sheriffs).  Further, *any* job-related claim against a sheriff or his deputy for money damages is barred; the only permissible claims against sheriffs related to their official actions are for certain types of injunctive relief.  *Id*.  Finally, there is no allegation here that Deputies Blue and Carter were not acting "in the line or scope" of their duties when the events in question occurred.  Therefore, the motion to dismiss the state-law claims (Counts V-X) is due to be granted.

## IV.  CONCLUSION

It is ORDERED that the motion to dismiss (Doc. # 11) is GRANTED in part and DENIED in part.  It is GRANTED with respect to Counts I, and IV-X in their entirety.  It is GRANTED with respect to Deputy Carter with respect to all counts, and the Clerk of the Court is instructed to terminate Deputy Carter as a Defendant in this action.  It is GRANTED to the extent Ms. Lewis relies on a substantive Fourteenth Amendment theory in Count II.  It is DENIED as to Counts II and III against Deputy Blue.

DONE this 3rd day of March, 2010.

_____/s/   W.  Keith Watkins_____

UNITED STATES DISTRICT JUDGE